REVISED November 28, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2007

Charles R. Fulbruge III
Clerk

No. 06-61075

John and Claire Tuepker

Plaintiffs-Appellees-Cross-Appellants

v.

State Farm Fire & Casualty Company

Defendant-Appellant-Cross-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

This case arises from the unprecedented destruction brought to the Mississippi Gulf Coast by Hurricane Katrina in August 2005. The hurricane completely destroyed the home of plaintiffs-appellees-cross-appellants, John and Claire Tuepker ("the Tuepkers"). Their residence and the property contained therein were insured by defendant-appellant-cross-appellee, State Farm Fire and Casualty Company ("State Farm"). When State Farm refused to compensate the Tuepkers for their losses, the Tuepkers on November 21, 2005 sued State Farm in the district court below, federal jurisdiction being based on diversity of citizenship. State Farm filed a motion to dismiss the complaint

under FED. R. CIV. P. 12(b)(6). The district court denied the motion. This interlocutory appeal is before us under 28 U.S.C. § 1292(b).

CONTEXT FACTS AND PROCEEDINGS BELOW

(a) Proceedings

The Tuepkers' complaint identified their State Farm issued "Homeowner's Policy," with policy period August 9, 2005 to August 9, 2006, and attached a "representative copy of the subject policy." The complaint alleged, inter alia, that "[o]n August 29, 2005 . . . the insured residence and the personal contents therein were completely destroyed by hurricane wind, rain, and/or storm surge from Hurricane Katrina . . . This loss was covered under the subject policy. There is nothing left of the insured residence or contents but a slab." The complaint further included the allegations that

> ". . . regardless of whether the total damage to Plaintiffs' insured property was caused by hurricane wind, storm surge proximately caused by hurricane wind, or both, the so-called 'flood' exclusion, which State Farm defines in the subject policy and in its denial letter as 'flood, surface water, waves, tidal water, tsunami, seiche, or overflow of a body of water, or spray from any of these, all whether or not driven by wind,' is not applicable here and in any event, is modified by the 'Hurricane Deductible'"

and that "[t]his 'flood' exclusion is ambiguous and deceiving when read in conjunction with . . . the 'Hurricane Deductible'." The relief sought in the complaint includes, inter alia, declaratory relief, and the declarations sought include a declaration "that any damage to Plaintiffs' insured residence and property caused by 'storm surge' is not excluded under the subject policy" and "that the subject policy's 'flood' exclusion is not applicable and is ambiguous."

State Farm, in late December 2005, filed a motion to dismiss the complaint under FED. R. CIV. P. 12(b)(6) and 9(b) asserting, inter alia, that in respect to the declaratory relief sought, the complaint "fail[s] as a matter of law, because the claims for insurance coverage are barred by the plain language of the Plaintiffs' policy," that the policy's "water damage exclusion is valid and enforceable, and

unambiguously excludes losses that would not have occurred 'in the absence' of water damage" and "applies to water damage from 'hurricane' and 'storm surge'," and that "[t]he hurricane deductible endorsement does not provide coverage for hurricane damage not covered under the policy, including 'storm surge' damage, nor does it render the policy ambiguous."

The district court, in its May 23, 2006 order, denied State Farm's motion to dismiss "in accordance with" its Memorandum Opinion of the same date, in which the court, inter alia, construed, as a matter of law, a number of the relevant provisions of the State Farm policy, primarily including the policy's "Water Damage" exclusion clause and the clause, which introduces that and other related exclusions, commonly known as the "anti-concurrent-causation clause" or "ACC Clause." The court also addressed the policy's hurricane deductible endorsement and its personal property coverage "windstorm or hail" peril, as well as the burden of proof. The opinion holds that "interpretation of the terms of an insurance policy present questions of law, not fact" and that "where the terms of an insurance policy are clear and unambiguous, they are to be enforced as written." It further holds that

> "Losses directly attributable to water in the form of a 'storm surge' are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water from the Mississippi Sound driven ashore during Hurricane Katrina. This is water damage within the meaning of that [the 'Water Damage'] policy exclusion. The exclusion found in the policy for water damage is a valid and enforceable policy prevision.
>
> . . .
>
> Under applicable Mississippi law, where there is damage caused by both wind and rain (covered losses) and water (losses excluded from coverage) the amount payable under the insurance policy becomes a question of which is the proximate cause of the loss. To the extent that the State Farm policy is inconsistent with

this settled rule of Mississippi law, the exclusionary language is invalid."

The court also held the "anti-concurrent-causation clause" ambiguous and ineffective to exclude damage proximately caused by wind or rain, stating:

"I also find that the language in the State Farm policy that introduces subsection 2 of SECTION I - LOSSES NOT COVERED is ambiguous. The provisions in question purport to exclude from coverage losses that would otherwise be covered, such as wind damage, when that covered loss happens to accompany water damage (an excluded loss).

. . .

I find that this language in the State Farm policy creates ambiguities in the context of damages sustained by the insured during a hurricane. These provisions purport to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where an excluded cause of loss, e.g. water damage, also occurs. I find that these two exclusions are ambiguous in light of the other policy provisions granting coverage for wind and rain damage and in light of the inclusion of a 'hurricane deductible' as part of the policy.

To the extent that plaintiffs can prove their allegations that the hurricane winds (or objects driven by those winds) and rains entering the insured premises through openings caused by the hurricane winds proximately caused damage to their insured property, those losses will be covered under the policy, and this will be the case even if flood damage, which is not covered, subsequently or simultaneously occurred."

The court further held that State Farm had "the burden of proving that the [Water Damage] exclusion applies to the plaintiffs' claims."

State Farm, after the court denied its motion to alter or amend, then moved the court to certify to this court under section 1292(b) its May 23, 2006 order and opinion as involving the controlling legal question of whether "the anti-concurrent cause language in State Farm's homeowner's policies is

ambiguous and unenforceable." The Tuepkers opposed the motion as limited to that one particular issue but acknowledged that the criteria for section 1292(b) certification were met "provided . . . that all of the rulings made by the Court on the substantive legal issues surrounding interpretation of the State Farm contract are also certified for appeal." Thereafter, the district court, on September 27, 2006 issued its order certifying under section 1292(b) its May 23, 2006 order and opinion interpreting the State Farm policy in the noted respects as involving controlling questions of law as to which there is substantial ground for difference of opinion and that an appeal will materially advance the ultimate termination of the litigation.[1] The order states that "This certification is limited to the interpretation of the various provisions of the subject insurance policy under the factual circumstances presented."

In October 2006, both State Farm and the Tuepkers timely filed with this court their respective petitions for permissions to appeal under FED. R. APP. P., Rule 5, and on November 21, 2006 a motions panel of this court granted those petitions.[2]

(b) Policy provisions

The State Farm homeowner's policy had two relevant property coverage provisions. These are contained in its "SECTION I - YOUR PROPERTY COVERAGES" and are as follows:

"SECTION I - LOSSES INSURED

---

[1] The order notes, inter alia, that in the May 23 opinion: "The Court determined that the water damage exclusion is valid and that storm surge is nothing more than a flood, but that the anti-concurrent cause clause (especially when combined with a hurricane deductible endorsement) does not negate coverage for damage which is caused by the covered risk of wind. In addition, this Court held that Plaintiffs bear the burden of proving allegations that hurricane wind (and resulting damages when the direct force of wind causes an opening in a roof or wall and the rain enters through this opening), while the exclusion is an affirmative defense on which the Defendant carries the burden."

[2] Thereafter, the district court stayed further proceedings before it pending resolution of the appeal.

COVERAGE A - DWELLING
We insure for accidental direct physical loss to the property
described in Coverage A, except as provided in SECTION I -
LOSSES NOT INSURED.

COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described
in Coverage B caused by the following perils, except as provided in
SECTION I - LOSSES NOT INSURED."

There next appear subparagraphs "1." through "16." in each of which a Coverage
B covered peril is listed and described, subparagraph "2" of which is as follows:

"2. Windstorm or hail. This peril does not include loss to property
contained in a building caused by rain, snow, sleet, sand or dust.
This limitation does not apply when the direct force of wind or hail
damages the building causing an opening in a roof or wall and the
rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers,
furnishings, equipment, and outboard motors, only while inside a
fully enclosed building."

The next portion of the property coverages section of the policy is entitled
"SECTION I - LOSSES NOT INSURED." It consists of three parts (numbers
"1.", "2." and "3."),[3] the second of which ("2.") commences as follows:

"2. We do not insure under any coverage for any loss which would
not have occurred in the absence of one or more of the following
excluded events. We do not insure for such loss regardless of: (a) the
cause of the excluded event; or (b) other causes of the loss; or (c)
whether other causes acted concurrently or in any sequence with
the excluded event to produce the loss; or (d) whether the event
occurs suddenly or gradually, involves isolated or widespread

---

[3] Part "1." of "SECTION I - LOSSES NOT INSURED" lists in its subparagraphs "a."
through "n." diverse exclusions stated to apply only to "any loss to the property described in
Coverage A." None of these are now at issue or otherwise here relevant. Part "3." to
"SECTION I - LOSSES NOT INSURED" relates to exclusions "under any coverage for any loss
consisting of one or more of the items below." None of these are now at issue or otherwise here
relevant.

damage, arises from natural or external forces, or occurs as a result of any combination of these."

This is the noted "anti-concurrent-causation clause" or "ACC Clause." Immediately after it there next appear subparagraphs "a" through "f" in each of which an excluded event under "2." is listed and described, subparagraph "c." of which is as follows:

"c. Water Damage, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured."

The policy also includes a "Hurricane Deductible Endorsement" which provides:

"The following Deductible language is added to the policy:

Deductible

The Hurricane deductible percentage (%) shown in the Declarations applies only for direct physical loss or damage to coverage property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a hurricane as defined above. The deductible for loss caused by each hurricane occurrence

is the amount determined by applying the deductible percentage (%) shown in the Declarations to the COVERAGE A - DWELLING limit shown in the Declarations.

In the event of a hurricane loss, this deductible will apply in place of any other deductible stated in the policy. In no event will this deductible be less than the Section I deductible amount shown in the Declarations.

All other policy provisions apply."[4]

## DISCUSSION

As the court below correctly ruled, and as all parties recognize, the governing substantive law is that of Mississippi. We address the proper interpretation and legal effect of the State Farm policy under Mississippi law, and hence our review is de novo. Leonard v. Nationwide Mutual Ins. Co., 499 F.3d 419, 428 (5th Cir. 2007); Gladney v. Paul Revere Life Ins. Co., 895 F.2d 238, 241 (5th Cir. 1990); Anglin v. Gulf Guaranty Life Ins. Co., 956 So. 2d 853, 859 (Miss. 2007).

---

[4] This endorsement begins with the following definitions:

"Definitions

As used in this endorsement hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the hurricane includes the time period, in this state:

1. beginning at the time a hurricane watch or hurricane warning is issued for any part of this state by the National Hurricane Center of the National Weather Service;

2. continuing for the time period during which the hurricane conditions exist anywhere in this state; and

3. ending 24 hours following the termination of the last hurricane watch or hurricane warning for any part of this state by the National Hurricane Center of the National Weather Service.

We limit our discussion to the issues raised by the parties on appeal: Whether damage resulting to the Tuepkers' home from the storm surges is an excluded peril that is not covered by the policy; whether the ACC Clause in the State Farm policy is ambiguous; and whether the efficient proximate cause doctrine applies in this case. For the reasons stated below, we affirm in part, reverse in part, and remand.

A. Water Damage Exclusion

State Farm urges this court to affirm the district court's conclusion that the Water Damage Exclusion is valid under Mississippi law and that it includes losses attributable to storm surge. The Tuepkers argue that damages caused by storm surge are not excluded from coverage by the Water Damage Exclusion.

The Water Damage Exclusion states that water damage includes damages caused by, among other things, flood, waves, tidal water, and overflow of a body of water, "all whether driven by wind or not." These words accurately describe the influx of water into the Tuepkers' home that was caused by the Katrina storm surge. Furthermore, courts have held that similarly worded water damage exclusions apply to flooding that occurs during a hurricane. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 214 (5th Cir. 2007) (concluding that under Louisiana law, similar water damage exclusions in insurance policies are unambiguous and that flooding resulting from the damage to the levees during Hurricane Katrina "fits squarely within the generally prevailing meaning of the term 'flood,'" and is, thus, excluded from coverage by the policies); Bilbe v. Belsom & State Farm Fire and Cas. Co., No. 06-7596, slip op. at 4 (E.D. La. July 12, 2007) (finding that under Louisiana law, the State Farm ACC Clause and Water Damage Exclusion at issue in this case are unambiguous and that water damage caused by the inundation of the plaintiff's home from tidal water from Lake Pontchartrain "is water damage within the meaning of State Farm's policy

exclusion").[5] In interpreting an almost identical water damage exclusion and applying Mississippi law,[6] this court has found that "storm surge" is "little more than a synonym for a 'tidal wave' or wind-driven flood," both of which are perils excluded by the State Farm policy. Leonard, 499 F.3d at 437. In Leonard, we concluded that the lack of a specific reference to a "storm surge" in the water damage exclusion did not render the policy ambiguous or allow the insured party to recover for losses caused by the storm surge associated with Hurricane Katrina. Id. at 435. Our opinion in Leonard specifically relied on the Katrina Canal Breaches Litigation opinion and on the district court's opinion here for the holding that the Katrina "storm surge" was unambiguously excluded water damage.[7]

We conclude that under Mississippi law, the Water Damage Exclusion is valid and that the storm surge that damaged the Tuepkers' home is a peril that

---

[5] In support of their argument, the Tuepkers cite an unreported case from the United States District Court in California, which held that a water damage exclusion similar to that at issue in this case was ambiguous and that it did not "on its face . . . clearly exclude loss caused by 'storm surge' or 'wind-driven water.'" Northop Grumman Corp. v. Factory Mutual Ins. Co., No. CV 05-08444, 2007 WL 2385134, *7 (C.D. Cal. Aug. 16, 2007). That case differs significantly from the present case because the California district court based its decision in large part on the different definitions of "flood" in the two policies involved in the case, the "Primary Policy" and the "Excess Policy." Id. In the Excess Policy, unlike in the Primary Policy, the definition of "flood" did not include the language "whether driven by wind or not." Id. Thus, the Excess Policy language was ambiguous when read in combination with the Primary Policy. Id. ("Specifically, it is not the mere omission of the phrase from the Excess Policy that creates ambiguity. Rather, it is the deviation from the initial definition used in the Primary Policy which creates uncertainty about whether "Flood" had different meanings in the Primary and Excess Policies."). Northrop is not controlling and does not in the least even arguably support the Tuepkers' argument that the Water Damage Exclusion here does not clearly exclude losses caused by storm surge.

[6] The water damage exclusion at issue in Leonard "explicitly exempt[ed] from coverage damage caused by 'flood ... waves, tidal waves, [and] overflow of a body of water ... whether or not driven by wind.'" Leonard, 499 F.3d at 437.

[7] Moreover, as discussed below, nothing in the Hurricane Deductible Endorsement renders the Water Damage Exclusion ambiguous in this respect.

is unambiguously excluded from coverage under State Farm's policy. Therefore, we affirm the district court's ruling on this issue.

## B. Anti-Concurrent-Causation Clause

The Tuepkers urge this court to uphold the district court's conclusion that the ACC Clause was ambiguous. They argue that the ACC clause is unenforceable because it conflicts with other provisions in the policy, namely the express coverage for losses attributable to wind and the Hurricane Deductible Endorsement. State Farm argues that the ACC Clause is not ambiguous because it cannot be construed to have two or more reasonable meanings and it does not conflict with any other provisions in the policy. We agree with State Farm.

Under Mississippi law, if the words of an insurance policy are plain and unambiguous, courts will afford them their ordinary meaning. Anglin, 956 So. 2d at 859.

This court has recently ruled that a Nationwide Mutual Insurance Company ACC Clause, which is similar to that in the State Farm insurance policy in this case, is not ambiguous under Mississippi law. Leonard, 499 F.3d at 430.[8] The ACC Clause and subsequent water damages exclusion at issue in Leonard read:

---

[8] This finding is further supported by case law from both federal and Mississippi courts. See In re Katrina, 495 F.3d at 221 (finding that under Louisiana law, similarly worded State Farm policies, which also included ACC Clauses, were unambiguous and enforceable, but not addressing the impact of the ACC Clause in the policies); Bilbe, No. 06-7596, at 4 (granting State Farm's motion for summary judgment in a case with an identically worded ACC Clause and water damage exclusion, and finding those two provisions to be clear and unambiguous); Rhoden v. State Farm Fire and Cas. Co., 32 F. Supp. 2d 907, 912 (S.D. Miss. 1998) (finding an ACC Clause worded identically to State Farm's clause and the subsequent "earth movement" exclusion in a homeowner's policy to be unambiguous and clear under Mississippi law); Boteler v. State Farm Fire and Cas. Co., 876 So. 2d 1067, 1070 (Miss. Ct. App. 2004) (finding State Farm's ACC Clause and earth movement exclusion to be "clear" and enforceable, and determining that State Farm used "[u]nambiguous language of exclusion"). For its holding in this respect our Leonard opinion specifically relied on, inter alia, Rhoden and Boteler, each applying Mississippi law to the same ACC Clause present here.

"1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss. . . .

2. Water or damage caused by water-borne material . . .
(1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind." Id. at 430 (emphasis deleted).

The State Farm ACC Clause does differ from the Nationwide ACC Clause in that it states that the policy does not cover "any loss which would not have occurred in the absence of one or more of the following excluded events." However, this difference does not introduce any ambiguity or significantly differentiate the clause from the ACC Clause at issue in Leonard. Both clearly state that excluded losses – here, any loss which would not have occurred in the absence of one or more of the excluded events – will not be covered even if a nonexcluded event or peril acts "concurrently or in any sequence" with the excluded event to cause the loss in question. Thus, Leonard governs this case, and compels the conclusion that the ACC Clause in State Farm's policy is not ambiguous, and should be enforced under Mississippi law. As the Leonard opinion directs, any damage caused exclusively by a nonexcluded peril or event such as wind, not concurrently or sequentially with water damage, is covered by the policy, while all damage caused by water or by wind acting concurrently or sequentially with water, is excluded. Id. Thus, the ACC Clause in combination with the Water Damage Exclusion clearly provides that indivisible damage caused by both excluded perils and covered perils or other causes is not covered. However, as State Farm has conceded in its briefs here and below, the ACC Clause by its terms applies only to "any loss which would not have occurred in the absence of one or more of the below listed excluded events", and thus, for example, if wind blows off the roof of the house, the loss of the roof is not

excluded merely because a subsequent storm surge later completely destroys the entire remainder of the structure; such roof loss did occur in the absence of any listed excluded peril.

Furthermore, contrary to the ruling of the district court, the Hurricane Deductible Endorsement in the State Farm policy does not in any way render the ACC Clause ambiguous. The Hurricane Deductible Endorsement clearly states that a higher deductible percentage will apply for losses attributable to hurricane occurrences. There is nothing in the language of the endorsement, even when read in conjunction with the loss exclusion provisions, that expands or changes any other aspect of the policy.

We addressed this issue in In re Katrina, 495 F.3d 191. There, the plaintiffs argued that similar hurricane deductible endorsements would lead a reasonable policyholder to expect their policy to cover damage resulting from a storm surge caused by a hurricane despite the fact that the policies excluded coverage for water damage. Id. at 220.[9] Applying Louisiana law, this court held that "the plain language of the hurricane-deductible endorsements indicates that they do nothing more than alter the deductible for damage caused by a

---

[9] That case involved a consolidation of multiple cases, and many of the policies at issue in the litigation contained hurricane deductible endorsements. In re Katrina, 495 F.3d at 220. As an example, the court provides a hurricane deductible endorsement from one policy, which stated:

"We will pay only that part of the total of the loss for all Property Coverages that exceeds the hurricane deductible stated on the Coverage Summary. The hurricane deductible shown on the Coverage Summary applies to all covered property for direct physical loss or damage caused directly or indirectly by a hurricane as defined below. Such deductible applies regardless of any other cause or event contributing concurrently on in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by a hurricane. In no event will the deductible applied for a hurricane loss be less than the property deductible shown on the Coverage Summary.
Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which results in direct physical loss or damage to property by a storm system that has been declared to be a hurricane by the National Weather Service . . . ." Id.

13

hurricane." Id. We also found that the endorsements do not extend the scope of the policies to cover floods. Id. See also Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d 1312, 1322 (M.D. Fla. 2002) (finding that the deductible clause did not modify the scope of the exclusion under the ACC Clause).

In pertinent part, the instant Hurricane Deductible Endorsement states:

"The Hurricane deductible percentage . . . applies only for direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a hurricane . . . . In the event of a hurricane loss, this deductible will apply in place of any other deductible stated in the policy. . . All other policy provisions apply."

Like the hurricane deductible endorsements at issue in In re Katrina, this clause clearly only applies to the deductible, and does not affect the scope of coverage under the policy. The list of enumerated perils covered by the Hurricane Deductible Endorsement only includes perils that are covered under the policy like wind, rain, and hail damage. It does not include any perils related to flooding or any peril covered under the Water Damage Exclusion. The fact that water damage is explicitly excluded from coverage and that the endorsement concludes by stating that "[a]ll other policy provisions apply," unambiguously reflects that the endorsement does not enlarge or change the scope of coverage under the policy.

In light of all of the relevant policy provisions, the ACC Clause is unambiguous and enforceable. We accordingly reverse the holding of the district court that State Farm's ACC Clause is ambiguous under Mississippi law.

C. Efficient Proximate Cause Doctrine

The Tuepkers argue that the ACC Clause is not enforceable because it conflicts with the "efficient proximate cause doctrine." The district court agreed to the extent of refusing to apply that clause when it might deny coverage that would have been allowed under the "efficient proximate cause doctrine." Under that doctrine, when a loss is caused by the combination of both covered and

excluded perils, the loss is fully covered by the insurance policy if the covered risk proximately caused the loss. See Leonard, 499 F.3d at 432. Under this doctrine, if a policy covers wind damage but excludes water damage, the insured may recover for damages if it can show that the wind (the covered peril) proximately or efficiently caused the loss, notwithstanding that there were other excluded causes contributing to that loss like flooding. Id. (citing Lititz Mut. Ins. Co. v. Boatner, 254 So.2d 765, 767 (Miss. 1971)).

Mississippi courts have yet to indicate whether a homeowner's insurance policy may preclude recovery for damages resulting from the concurrent action of wind and water in a hurricane. Id. at 431. However, in Leonard, we made an "Erie guess" as to how the Mississippi Supreme Court would rule on the issue. Id. The efficient proximate cause doctrine is the "default causation rule in Mississippi regarding damages caused concurrently by a covered and an excluded peril under an insurance policy." Id. However, Leonard concludes that ACC Clauses are enforceable under Mississippi law, and that they circumvent the efficient proximate cause doctrine. See id. at 436 ("[W]e conclude that use of an ACC clause to supplant the default causation regime is not forbidden by Mississippi caselaw . . . , statutory law, or public policy."). [10]

Therefore, under Leonard, which binds us, and with which we in any event agree, the ACC Clause in State Farm's policy overrides the efficient proximate cause doctrine. Accordingly, we reverse the district court's holding that the ACC Clause in the State Farm policy is invalid to the extent that it conflicts with the efficient proximate cause doctrine.

D. Proper Assignment of Burdens of Proof

---

[10] In Leonard, in respect to this holding we relied in part on Mississippi law cases involving the same State Farm ACC Clause. See, e.g., id. at 433-34 and n.8. We also relied in part on the Mississippi Insurance Commissioner's approval of policy forms having the ACC Clause, which is likewise applicable here. Id. at 435.

State Farm contends that the district court erred in assigning the parties' respective burdens of proof under the "open peril" coverage for the residence and the "named peril" coverage for the personal property. Under Mississippi law, the plaintiff bears the burden of proving his right to recover under an insurance policy. Britt v. Travelers Insurance Co., 566 F.2d 1020, 1022 (5th Cir. 1978). For "named peril" coverage – here Coverage B - Personal Property – the plaintiff has the burden of proving that any losses were caused by a peril covered by the policy. Lunday v. Lititz Mut. Ins. Co., 276 So. 2d 696, 699 (Miss. 1973). Under "open peril" coverage – here Coverage A - Dwelling – the plaintiff still has the basic burden of proving his right to recover. Britt, 566 F.2d at 1022. However, under "open peril" coverage "the insurer bears the burden of proving that a particular peril falls within a policy exclusion," and "must plead and prove the applicability of an exclusion as an affirmative defense." Leonard, 499 F.3d at 429; see also Britt, 566 F.2d at 1022. State Farm argues that once an insurer has provided evidence that an item of claimed damage resulted at least in part from an excluded peril, the burden shifts to the insured to produce evidence as to what portion of the damages were caused by perils covered by the policy. However, the parties here entered into a "High-Low Agreement" under which the Tuepkers will, for specified consideration varying in amount depending on the outcome of this appeal, release State Farm from all claims related to this case at the conclusion of all appeals, so this case will never return to the district court for an actual trial.[11] Thus, the questions that the parties raise regarding

---

[11] On February 6, 2007, State Farm and the Tuepkers agreed to the amount of liquidated damages that State Farm will pay the Tuepkers upon "the outcome of all appeals" ("the High-Low Agreement"), one specified amount if "the final appellate decision on coverage issues is favorable to State Farm," and a significantly greater amount if that decision favors the Tuepkers. The Tuepkers agreed to release State Farm from all claims at the conclusion of all appeals of the case, so the case will not continue in lower courts. This type of agreement, which liquidates damages to be paid upon the outcome of a case while maintaining a live case and controversy between the parties with respect to the issues on appeal is permissible under Havens Realty Corp. v. Coleman, 102 S.Ct. 1114, 1120 (1982), and Nixon v. Fitzgerald, 102

the burden of proof are not relevant to the case and controversy at issue in this court, and we will not expand upon previous precedents regarding those issues.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in part, reverse it in part, and remand the case for further proceedings not inconsistent with this opinion.[12]

AFFIRMED in part; REVERSED in part;

and REMANDED.

---

S.Ct. 2690, 2698 (1982).

[12] Three of the parties' motions were carried with the case.

On June 1, 2007, we entered an order expediting this appeal and setting it for oral argument the week of September 3, 2007. The same day, the Tuepkers' filed a motion to certify determinative questions of law regarding State Farm's ACC Clause and Water Damage Exclusion to the Mississippi Supreme Court. We deny that motion because plaintiffs originally chose to file this case in federal, not state, court, because the Fifth Circuit has set binding precedent regarding the status of Mississippi law on these issues in Leonard, and also because of the delay it would cause in the ultimate disposition of this case.

We grant State Farm's motions to strike portions of United Policyholders' and Owen & Galloway's amicus curiae briefs.

Finally, we deny the Tuepkers' motion to supplement the record on appeal.