MAXWELL, J.,
for the Court:
¶ 1. Among its many destructive acts, Hurricane Katrina unmoored a casino barge, carrying it into Cherri R. Porter’s beachfront home. According to Porter, this was a covered event under her all-risk homeowner’s insurance policy, which did not expressly exclude “barges.” When coverage was denied, Porter sued her insurance company and insurance agent. She also sued the casino for negligence. The circuit court found none of Porter’s claims could survive summary judgment. After de novo review, we reach the same conclusion.
¶ 2. Porter’s homeowner’s policy clearly and unambiguously excluded not only loss caused by water but also “loss [that] would not have occurred in the absence of’ water. While Porter claims the “true cause” of the loss of her home was “the barge,” she cannot show that the loss of her home would not have occurred in the absence of water — specifically the storm surge that carried the barge into her home. Thus, her claim that her insurer improperly denied her coverage must fail.
¶ 3. Likewise, her claim that her insurance agent was negligent in procuring her coverage fails. Porter simply has no evidence that she asked her agent to obtain any coverage other than what her homeowner’s policy clearly provided.
¶ 4. She also has no evidence to create a jury issue on her negligence claim that the casino breached its duty to her as its neighbor. While Porter did submit an affidavit by an engineering expert, the expert did not opine that the casino acted unreasonably in light of the foreseeable risks associated with a hurricane. And contrary to Porter’s assertion, the fact that the barge broke free during the hurricane, in and of itself, is not evidence the casino negligently designed and maintained the barge’s mooring system. Because we find Porter failed to establish the essential element of breach, her negligence claim fails as a matter of law.
¶ 5. We thus affirm the circuit court’s grant of summary judgment in favor of all three defendants.
Background Facts and Procedural History
¶ 6. Porter’s home on East Beach Boulevard, Biloxi, Mississippi, was destroyed during Hurricane Katrina. According to Porter, the destruction occurred when the barge operated by Grand Casino of Mississippi, Inc.-Biloxi came loose from its moorings and allided with her home.
¶ 7. Porter made a claim under her “all-risk” homeowner’s insurance policy with State Farm Fire and Casualty Company. But her policy expressly excluded loss caused by wind or water damage — as well as “loss [that] would not have occurred in the absence of [an] excluded event[].” Because any loss caused by the barge would not have occurred in the absence of an excluded event — specifically the flood of storm surge that broke Grand Casino’s barge from its moorings — State Farm denied coverage.
¶8. Porter sued State Farm for bad-faith denial of coverage and negligence in issuing her policy. She included a claim against State Farm agent Max Mullins, alleging Mullins negligently issued her a substandard policy and violated statutory trade practices. Porter also named Grand Casino as a defendant, alleging it had been *955 negligent in its design and maintenance of the barge’s mooring system.[1]
¶ 9. In 2009, State Farm and Mullins succeeded in having the claims against them dismissed on summary judgment. Porter had admitted there was no other explanation for the barge’s movement other than the forces of wind and water. Because the policy clearly and unambiguously excluded loss caused, by water, the trial court found State Farm was entitled to a judgment in its favor. And since Mullins had never made contrary representations to Porter, the trial judge found Mullins was also entitled to a judgment in his favor.
¶ 10. Porter appealed. But because the grant of summary judgment in State Farm’s and Mullins’s favor was not a final judgment, as it left pending the claims against Grand Casino, the Mississippi Supreme Court dismissed the appeal. See M.R.C.P. 54(b) (designating any order that adjudicates the liabilities of fewer than all the parties as nonfinal, subject to revision until all liabilities between all parties are resolved, unless certified as final).
¶ 11. In 2012, Grand Casino was also granted summary judgment in its favor. In dismissing Grand Casino, the circuit court cited a decision by this court addressing a factually similar scenario — a casino barge that was unmoored during Katrina. In that case, we held the duty the casino owed its land-based neighbors “only required that they use reasonable measures and did not require that they take additional measures for the unforeseen.” Bay Point High & Dry, L.L.C. v. New Palace Casino, L.L.C., 46 So.3d 821, 825 (¶ 13) (Miss.Ct.App.2010). The circuit court found Porter could not establish a jury question over whether Grand Casino failed to meet this duty.[2] The undisputed evidence showed the safety measures Grand Casino took were designed to withstand a hurricane equaling in severity the worst hurricane then on record. And the fact that Grand Casino did not anticipate Hurricane Katrina’s record-setting forces is not evidence that Grand Casino breached a duty owed to Porter.
¶ 12. With all claims against all defendants disposed of, both the 2009 and 2012 summary-judgment orders became final and appealable. See M.R.C.P. 54(b). Porter timely appealed both judgments.[3]
Discussion
¶ 13. Grants of summary judgment are reviewed de novo. Bradley v. Kelley Bros. Contractors, Inc., 117 So.3d 331, 336 (¶ 21) *956 (Miss.Ct.App.2013). We perform the exact same analysis as the trial court — “look[ing] at ‘all evidentiary matters’ in the record to see if there is any genuine issue of material fact and if the movant is entitled to a judgment as a matter of law.” Id. (quoting Titan Indem. Co. v. Estes, 825 So.2d 651, 654 (¶ 11) (Miss.2002)). We view the evidence produced at the summary-judgment stage in the light most favorable to Porter, the nonmovant, giving Porter the benefit of any doubt. See id.
¶ 14. As summary-judgment movants, State Farm, Mullins, and Grand Casino each had a burden to persuade the court there were no genuine issues of material fact and each was entitled to a judgment as a matter of law. See Karpinsky v. Am. Nat’l Ins., 109 So.3d 84, 88 (¶ 11) (Miss.2013). Porter had a burden too. Because Porter, as the plaintiff, would have borne the burden of proof at trial, she had to produce evidence at the summary-judgment stage establishing a triable fact issue on each element of each claim. See id.
¶ 15. We acknowledge Porter has presented evidence, through an expert opinion, that her home was destroyed when the casino’s barge allided with her house. But like the circuit court, we do not find this evidence, even when viewed in her favor, satisfies her burden of production and saves her from summary judgment being entered against her.

I. No Coverage Under State Farm Policy

¶ 16. Porter’s homeowner’s policy covered all risks unless the risk was specifically excluded. See Coastal Hardware & Rental Co., LLC v. Certain Underwriters at Lloyds, London, 120 So.3d 1017, 1024 (¶29) (Miss.Ct.App.2013) (citing Robi-chaux v. Nationwide Mut. Fire Ins., 81 So.3d 1030, 1039 n. 5 (Miss.2011)) (contrasting an all-risk policy with a named-perils policy). In Porter’s claim for bad-faith denial of coverage, while she bears the burden to prove she had a right to recover under the policy, it is State Farm’s burden as the insurer to prove a policy exclusion applied. See id. (citing Tuepker v. State Farm,Fire & Cas. Co., 507 F.3d 346, 356 (5th Cir.2007)).
¶ 17. To meet this burden, State Farm pointed to its policy language: “We do not insure under any coverage for any loss which would not have occurred in the absence of ... Water Damage, meaning: ... flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether driven by wind or not[.]” State Farm argued, and the circuit court agreed, Porter’s loss would not have occurred without “storm surge — essentially a massive wall of water[ jpushed ashore by Hurricane Katrina’s winds.”[4] So the policy exclusion applied.
¶ 18. Porter insists State Farm did not meet its burden — and thus was not entitled to summary judgment — because the policy did not exclude the “true cause” of her loss. As she sees it, the “true cause” of the destruction of her home was “the barge.” But based on the undisputed events, the barge in and of itself could not have been the cause.
¶ 19. By definition, a “cause” is “[t]he producer of an effect[.]”[5] And to produce an effect requires force. To take Porter’s argument to its logical conclusion, the barge would have had to have generated its own force to be the “true cause” of the damage, which it obviously did not. So unquestionably, the barge’s allision with *957 Porter’s home could not have occurred without the forces of wind and water.
¶ 20. While her expert avoided mention of storm surge, he did say that the barge “allided” with Porter’s house. “Mide” is a nautical term, used to describe when a moving object traversing across water hits a stationary object. Thus, boats and barges “allide,” while trains, planes, and automobiles “collide.” So by specifically alleging the damage to her home was caused when the barge “allided” with her house, Porter necessarily conceded the barge was carried or propelled by water to get to her house. Because her house was normally situated on dry land, the only explanation of the presence of water in her yard was the storm surge.
¶ 21. Thus, the storm surge and barge became “an indivisible force, occurring at the same time, to cause direct physical damage resulting in loss.” Corban v. United Servs. Auto. Ass’n, 20 So.3d 601, 614 (¶ 36) (Miss.2009). So the barge was not the “true cause,” but instead a “concurrent cause” coupled with the excluded storm surge, which makes the barge also an excluded cause of loss under the clear and unambiguous language of the policy. Cf id. at 614-15 (¶ 37); see also Preis v. Lexington Ins., 508 F.Supp.2d 1061, 1073 (S.D.Ala.2007) (holding damage caused by flood debris excluded under “water damage” exclusion); Ervinwood Marine, Inc. v. Fireman’s Fund Ins., No. 91-L037, 1992 WL 213123, at *3 (Ohio Ct.App. Sept. 4, 1992) (unpublished) (holding damage to docks cause by flood debris excluded because, without excluded event of flooding, damage would not have occurred).
¶ 22. Because Porter’s loss was not covered, her claim for bad-faith denial of coverage against State Farm necessarily fails as a matter of law.

II. No Claim for “Negligent Procurement of Insurance”

¶ 23. As a fail-back claim, Porter suggests the loss of her house by the barge’s allision should have been covered under her all-risk policy with State Farm. And the fact it was not covered proves her insurance agent, Mullins, was negligent.
¶ 24. Mississippi does recognize claims against insurance agents for “negligent procurement of insurance.” Curry v. State Farm Mut. Auto. Ins., 599 F.Supp.2d 734, 738 (S.D.Miss.2009) (citing McKinnon v. Batte, 485 So.2d 295, 297 (Miss.1986); Simpson v. M-P Enters., Inc., 252 So.2d 202, 207 (Miss.1971); Haggans v. State Farm Fire & Cas. Co., 803 So.2d 1249, 1252 (¶ 8) (Miss.Ct.App.2002)). But as the United States District Court for the Southern District of Mississippi has rightly observed, “the cases that recognize this tort involve allegations that the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage requested by the insured.”[6] Id. at 738-39 (citations omitted).
¶ 25. Here, Mullins did not fail to procure coverage. In fact, Mullins was not the agent who had procured the policy in the first place. Instead, he was tasked with maintaining the coverage his predecessor had acquired, which Mullins indis *958 putably did. Porter has offered no evidence Mullins failed to provide any specific additional or variant coverage she requested. To the contrary, she admitted in her deposition that she never requested Mullins provide any coverage other than what she already had. In particular, she did not ask Mullins to obtain coverage for loss caused by storm surge, but instead opted to use a different insurance agent for her separate wind and flood insurance policies.
¶ 26. As the insured, Porter had a duty to read her policy and is imputed with the knowledge that her all-risk policy expressly excluded “coverage for any loss which would not have occurred in the absence of ... Water Damage, meaning: ... flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether driven by wind or not[.]” See Mladineo v. Schmidt, 52 So.3d 1154, 1161-62 (¶ 26) (Miss.2010) (discussing duty-to-read and imputed-knowledge doctrines). Since Porter never requested Mullins provide such coverage, her claim against him for negligent procurement of insurance fails as a matter of law.

III. No Evidence of Negligence bg Grand Casino

¶27. We now turn to Porter’s claim that Grand Casino’s negligent mooring of its barge proximately caused the destruction of her home.[7]
¶28. This court has previously dealt with a negligence claim against another casino whose barge broke from its moorings during Hurricane Katrina and allided with a structure on neighboring property. Bay Point High & Dry, 46 So.3d at 822-23 (¶ 2). In that case, we affirmed the grant of summary judgment in the casino’s favor, finding the property owner failed to establish a jury question on whether the casino breached a duty owed to its neighbors. Id. at 824-26 (¶¶ 10-16). The circuit court here relied on Bay Point High & Dry to find Porter similarly failed to create a jury question about breach.
¶ 29. But after the circuit court granted summary judgment in this case, the Mississippi Supreme Court handed down another case involving a negligence claim against an unmoored casino barge that allided with a land-based structure. Eli Invs., LLC v. Silver Slipper Casino Venture, LLC, 118 So.3d 151 (Miss.2013). And in Eli Investments, the supreme court held that the property owner had presented sufficient evidence to establish a jury question on the breach issue. Id. at 155-56 (¶¶ 15-16).
¶ 30. In both the supreme court’s opinion in Eli Investments and ours in Bay Point High & Dry, the duty the casinos owed the neighboring property owners was the same. The casinos “owed a duty to [property] owners in close proximity to take reasonable measures to prevent foreseeable injuries in the event of a hurricane.” Id. at 154 (¶ 11); Bay Point High & Dry, 46 So.3d at 824 (¶ 8). But what distinguishes Eli Investments from our opinion in Bay Point High & Dry is the same thing that distinguishes all unsuccessful motions for summary judgment from successful ones — the plaintiffs ability to establish triable issues on each element of the claim. In Eli Investments, the *959 property owner — through its experts’ affidavits — established a jury issue on whether the casino breached its duty, while in Bay Point High & Dry, the property owner failed to create a question of whether the casino breached its duty. Compare Eli Invs., 118 So.3d at 154-56 (¶¶ 12-16), with Bay Point High & Dry, 46 So.3d at 824-26 (¶¶ 10-16).
¶ 31. Porter tries to align herself with Eli Investments. In that case, to support its motion for summary judgment, the casino had provided an affidavit from its engineering expert, who had inspected the barge’s mooring system after the hurricane. In the expert’s opinion, the barge had been “adequately moored,” complying with the Mississippi Gaming Commission’s gaming-licensure requirement that a barge “be moored ‘to withstand a Category 4 hurricane with 155 mile per hour winds and 15 foot tidal surge’ as a condition of licensure.” Eli Invs., 118 So.3d at 155 (¶ 14) (quoting Miss. Admin. Code 13—1—3:II-B, § 10). And in his estimation, the barge did not break free until the storm surge surpassed fifteen feet. Id.
¶ 32. The property owner countered with an affidavit from its own expert, who “opined that the storm surge caused by Hurricane Katrina was foreseeable to [the casino] in light of prior storm history in the Gulf of Mexico, and that [the casino] failed to consider what would happen if the casino barge encountered a significant storm surge.” Id. at (¶ 13). The property owner’s expert had also inspected the casino barge’s mooring system. And in his opinion, the system’s design was insufficient to hold the barge “if it encountered a significant storm surge, as experienced along the Mississippi Gulf Coast during prior hurricanes.” Id. He further supported his opinion about previous hurricanes with statistics from the National Oceanic and Atmospheric Administration. Id.
¶ 33. The supreme court found the two conflicting affidavits set up a “battle of the experts” on whether the casino breached a duty to neighboring property owners by not taking reasonable steps to secure its barge. And only a jury can decide the winner of such a battle. Id. at (¶ 15).
¶34. Porter argues her expert’s affidavit sets up a similar “battle of the experts,” making summary judgment improper. But even when viewed in the light most favorable to Porter, her expert’s affidavit does not contradict Grand Casino’s evidence that it acted reasonably. Porter’s expert, who never inspected the barge or mooring system after the hurricane, offered no opinion that the magnitude of storm surge that dislodged the barge was reasonably foreseeable. Nor did he opine the barge’s mooring system was unreasonably designed.
¶ 35. Instead, all he said is that he was asked to review the “annual inspections and heavy storm mooring plan” of Grand Casino. And because no such documents were given to him, he had no evidence showing annual inspections had been performed. He also opined that the absence of a heavy-storm mooring plan is a deviation from customary practice.[8] But he did not conclude that the absence of a heavy-storm plan caused or contributed to Porter’s injury.
¶36. Comparing Porter’s affidavit to the one in Eli Investments, the outcome-determinative distinction is that Porter’s affidavit lacks any evidence that Grand Casino failed to take reasonable measures to prevent foreseeable injuries and dam *960 ages in the event of a hurricane.[9] So unlike Eli Investments, there is no expert-based issue teed up for the jury to decide.
¶ 37. Instead, as the circuit court found, Porter’s claim is squarely in line with the property owner’s insufficient claim in Bay Point High & Dry. Like the casino in that case, Grand Casino put forth specific proof of the reasonable measures it took to design the barge’s mooring system to prevent foreseeable injuries from hurricanes. Grand Casino submitted affidavits from engineers who designed the mooring system. And. they explained that the barge was designed to float up to seventeen feet while remaining moored. This design allowed for two feet more than what the Mississippi Gaming Commission required. It also took into consideration the height of the storm surge of the worst hurricane on record in Mississippi at the time. See Bay Point High & Dry, 46 So.3d at 825 (¶ 12) (finding barge operator met its “duty to take reasonable measures for foreseeable injuries” based on evidence that its mooring system was designed not only to comply with regulation but also “to exceed the effects of the worst hurricane on record in Mississippi at the time”). Furthermore, these experts attested that the system had withstood hurricanes with storm surges below seventeen feet. But as Grand Casino’s meteorological expert explained, the storm surge that dislodged the barge was at the historical height of at least twenty-one feet, and possibly twenty-five feet.
¶ 38. Grand Casino also provided proof of the reasonable measures it took to regularly inspect and maintain its mooring system. Grand Casino submitted an affidavit from its facilities manager, Geoffrey Gol-lotte, who attested he and his team had regularly conducted visual inspections of the mooring system, performing maintenance when needed. While Grand Casino admitted no inspection log was kept, it insisted it utilized daily maintenance logs, which were destroyed by Hurricane Katrina. According to Grand Casino, this is why no maintenance records were given to Porter’s expert.
¶ 39. Porter’s response to this evidence is similar to the property owner’s in Bay Point High & Dry. There, the property owner argued the casino must have failed to take some reasonable measure because its barge broke free while another barge close by did not. Bay Point High & Dry, 46 So.3d at 825 (¶ 13). Porter similarly argues Grand Casino must have failed to adequately design or maintain its mooring system because the barge broke free during what was “only” a “Category 3 hurricane,” and the Mississippi Gaming Commission requires a system be designed to withstand a “Category 4 hurricane.”
¶ 40. We note, however, the Mississippi Gaming Commission’s regulation is “merely ... a condition of licensure.” Eli Invs., 118 So.3d at 155 (¶ 15). It is not “a conclusive standard of care for all casinos in all circumstances.” Id. The standard of care in this circumstance required Grand Casino “to take reasonable measures to prevent foreseeable injuries in the event of a hurricane.” Id. at 154 (¶ 11); Bay Point High & Dry, 46 So.3d at 824 (¶ 8). Hurricane Katrina’s storm category, wind strength, and storm-surge height certainly go to the issue of whether the magnitude of the storm was foreseeable. But to sup *961 port her assertion, Porter offered absolutely no proof of Hurricane Katrina’s storm category, wind speed, or storm-surge height, let alone evidence that the height of the storm surge that unmoored the barge was foreseeable. Yet Grand Casino did offer proof — specific proof that its barge’s mooring design complied with the Commission’s requirements by taking into consideration the possibility of storm surge within the foreseeable height of fifteen feet, proof that its mooring system had withstood hurricanes with a storm surge of fifteen feet, and proof by its expert that Hurricane Katrina’s storm surge at the location of its barge was higher than twenty feet.
¶ 41. The fact that the barge broke free, in and of itself, is not evidence Grand Casino was negligent. Instead, Porter had the burden of producing sufficient evidence Grand Casino breached its duty to take reasonable measures to prevent foreseeable injuries. But Porter put forth no such evidence. Thus, we agree with the circuit judge that her negligence claim based on the mooring system’s design and maintenance cannot survive summary judgment. See Smith ex. rel Smith v. Gilmore Mem’l Hosp., Inc., 952 So.2d 177, 180 (¶ 9) (Miss.2007) (holding “summary judgment is mandated where respondent has failed to make a showing sufficient to establish existence of an element essential to that party’s case”).
¶ 42. We affirm.
¶ 48. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.

. In her complaint, Porter had also asserted a claim for trespass. But this claim, in addition to being abandoned by Porter on appeal, clearly warranted dismissal via summary judgment. A trespass to land requires an intentional invasion on the land of another. Thomas v. Harrah's Vicksburg Corp., 734 So.2d 312, 316 (¶¶ 8-10) (Miss.Ct.App.1999). And Porter has never argued the barge’s entrance on her property was intentional. Instead, she has maintained the barge’s movement was the result of negligence.

. One of Porter's issues on appeal is that the circuit court erroneously applied the "act of God” defense. In Bay Point High & Dry, we found no error in the trial court’s finding that Hurricane Katrina was an "act of God.” Bay Point High & Dry, 46 So.3d at 825-26 (¶¶ 14-15). Grand Casino raised a similar defense in its motion for summary judgment. But the circuit court in this case did not grant summary judgment because Hurricane Katrina was an "act of God.” Instead, the court granted summary judgment because it found there was no material fact dispute on the issue of Grand Casino's alleged breach of duty. Because we agree that summary judgment should be affirmed for this same reason, we do not address Porter’s argument challenging the "act of God” defense.

.In response to Porter’s motion, the supreme court ordered this appeal be consolidated with Porter’s 2010 dismissed appeal for purposes of the record only.

. Leonard v. Nationwide Mut. Ins., 499 F.3d 419, 425 (5th Cir.2007).

. American Heritage Dictionary of the English Language 305 (3d. ed 1992).

. In 2010, the Mississippi Supreme Court clarified that a Mississippi insurance agent like Mullins "does not have an affirmative duty to advise the insured of coverage needs[J” Mladineo v. Schmidt, 52 So.3d 1154, 1163 (¶ 32) (Miss.2010). This is because "insureds are in a better position to assess their assets and risk of loss, coverage needs are often personal and subjective, and imposing liability on agents for failing to advise insureds regarding the sufficiency of their coverage would remove any burden from the insured to take care of his or her own financial needs.” Id.

. The elements Porter would have had to prove at trial and, thus, had to establish to survive summary judgment are: (1) the existence of a duty owed to her by the Grand Casino; (2) a breach of that duty; (3) a causal connection between the breach of duty and the alleged injury to her; and (4) injury and damages. Eli Invs., LLC v. Silver Slipper Casino Venture, LLC, 118 So.3d 151, 154 (¶ 10) (Miss.2013) (citing Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1143 (¶ 30) (Miss.2004)).

. Grand Casino has pointed out that its barge is permanently moored and, consequently, not in need of a plan to moor itself in the event of a storm.

. Porter's scant expert opinion can also be distinguished from the opinions produced in Biloxi Yacht Club v. Grand Casinos of Mississippi, Inc.-Biloxi, No. 1:107CV888-LG-RHW, 2009 WL 801635, at *3-4 (S.D.Miss. Mar. 25, 2009) (unpublished). In that case, the property owner submitted expert opinions that the storm surge that dislodged the casino barge had been below the foreseeable height of fifteen feet and the mooring system had not been designed to withstand a foreseeable wind speed. Id.