ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Bay Point High and Dry, L.L.C. filed suit for negligence against New Palace Casino, L.L.C. in the Harrison County Circuit Court. New Palace filed a motion for summary judgment, which the trial court granted. Bay Point now appeals arguing that the trial court erred in granting the motion. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In August 2005, Bay Point operated a marina and dry dock at 169 5th Street, Biloxi, Mississippi. New Palace operated a two barge floating casino facility across Biloxi Bay just north of the western end of the Highway 90 bridge connecting Biloxi to Ocean Springs, Mississippi. On August 29, 2005, Hurricane Katrina made its land
 
 *823
 
 fall in Mississippi. The violent conditions of the storm caused one of the barges, the SportsZone, to come loose from its moorings, float across the bay, and allegedly strike Bay Point marina.
 

 ¶ 3. Bay Point originally brought this suit in the United States District Court for the Southern District of Mississippi. During the course of discovery in that suit the United States Court of Appeals for the Fifth Circuit held in an unrelated case that permanently moored gaming barges on the Mississippi coast were not “vessels” under federal law. Because there were no other issues that would give the federal courts jurisdiction, Bay Point voluntarily dismissed its claims.
 

 ¶ 4. On September 21, 2007, Bay Point filed a new complaint for negligence against New Palace in the Harrison County Circuit Court. Bay Point claimed that New Palace was liable for damages caused to its building due to New Palace’s negligence in failing to secure or move the barge, as well as being negligent for not complying with the regulations of the Mississippi Gaming Commission. After filing an answer to the complaint and additional discovery, New Palace filed a motion for summary judgment on March 24, 2009. On August 7, 2009, the trial court held a hearing on the motion for summary judgment. After hearing the arguments and reading the briefs of both parties, the trial judge granted summary judgment in favor of New Palace.
 

 DISCUSSION
 

 WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT
 

 ¶ 5. When summary judgment is granted by a trial court, this Court is to use a de novo standard of review.
 
 [1]
 
 Summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 [2]
 
 This Court should view the evidence in the light most favorable to the non-moving party.
 
 [3]
 
 “The moving party bears the burden of demonstrating there is no genuine issue of material fact.”
 
 [4]
 
 The non-moving party cannot defeat a motion for summary judgment by mere general allegations or unsupported denials of material fact.
 
 [5]
 

 ¶ 6. To prove a negligence claim, Bay Point must show (1) a duty or standard of care owed by New Palace to Bay Point, (2) a breach of that duty by New Palace, and (3) this breach proximately caused (4) the damage to the Bay Point building.
 
 [6]
 
 “Duty and breach of duty are essential to finding negligence and must be demonstrated first.”
 
 [7]
 
 If this Court finds that there is an issue of fact with any of these elements, then we must reverse the
 
 *824
 
 judgment granting summary judgment.
 
 [8]
 
 Bay Point alleges that there are genuine issues of material facts as to whether New Palace was negligent in mooring its barge.
 

 A. Duty
 

 ¶ 7. Both Bay Point and New Palace erroneously argue about the legal duty imposed by the Commission’s regulations. Bay Point argues that the Commission is not a legislative body and has no power to establish legal duties. They note that the supreme court has found that where there is no express language in the statute creating a legal duty then none is created. Bay Point further argues that the scope of the Commission’s power is limited to licensing concerns and that any duty created in the regulations is unenforceable. New Palace argues that the Legislature established the Commission and gave them the power to adopt regulations necessary to the public interest. Next they argue that the regulation is the appropriate standard of care because it is the only standard set by any governing body concerning the mooring systems of permanently moored casino barges. However, these arguments are off point as the trial court did not use the Commission’s regulations as the basis for its finding of what constituted New Palace’s duty.
 

 ¶8. The trial judge found that New Palace owed a duty to the owners of real property in close proximity to the casino to take reasonable measures to prevent foreseeable injuries and damages in the event of a hurricane. The supreme court has held that:
 

 In analyzing an actor’s alleged negligence, this Court asks whether a duty exists and whether it has been breached. That is a question of law. But, “[t]he important component of the existence of the duty is that the injury is ‘reasonably foreseeable,’ ” and thus it is appropriate for the trial judge to decide.
 
 [9]
 

 Ordinary care does not require that the reasonable person anticipate an unusual or extraordinary event even if it is in the realm of possibility.
 
 [10]
 

 119. The trial court was correct in finding, as a matter of law, that New Palace owed a duty to owners in close proximity to take reasonable measures to prevent foreseeable injuries in the event of a hurricane. Further, the trial court was correct in finding that there is no genuine issue of material fact as to whether New Palace fulfilled that duty.
 

 B. Breach
 

 ¶ 10. The trial court held that New Palace met their duty to take reasonable measures for foreseeable injuries when they complied with Mississippi Gaming Commission Regulation section II(B)(10). The pertinent language of regulation section II(B)(10) states that “cruise vessels utilized for gaming on the Mississippi Gulf Coast, in the Biloxi Bay[,] or in the Bay of St. Louis, that are not self-propelled, are to be moored to withstand a Category 4 Hurricane with 155 mile per hour winds and 15 foot tidal surge.”
 
 [11]
 
 It is argued by Bay Point that there is significant evidence that the mooring system of the SportsZone did not meet this regulation. We disagree.
 

 ¶ 11. New Palace’s mooring system was designed by Gordon Reigstad, a licensed engineer in Mississippi. He stated in his
 
 *825
 
 affidavit that the design met and exceeded the standards in the regulation. The barge was actually designed to withstand an eighteen-foot-tidal surge. Bay Point’s own expert William Janowsky, although suggesting that the standards for storm surge should be doubled, acknowledged, that the designs met the regulation standards. Lastly, the record shows that the Commission reviewed and inspected the design of the mooring system. The Commission found that the mooring system met the regulation and granted New Palace a license. As a governmental body that has a duty to protect the public from harm, we find their determination to be strong proof that New Palace complied with the standards.
 

 ¶ 12. Since New Place built the mooring system to the standard the regulation set forth, and to exceed the effects of the worst hurricane on record in Mississippi at the time, Hurricane Camille, they met their duty to take reasonable measures for foreseeable injuries. Colonel Richard Henning, with the United States Air Force Reserve, reported that the storm surge near the location of the casino during Hurricane Camille was “on the order of thirteen to fifteen feet above sea level.” After Hurricane Camille it became foreseeable that a hurricane could generate a storm surge up to fifteen feet above sea level at Biloxi Bay. At the time Hurricane Katrina made landfall, there had not been a storm which had set the bar of foreseeability higher than fifteen feet. As mentioned above, the record is clear that the SportsZ-one was moored to withstand a fifteen-foot-storm surge, if not higher.
 

 ¶ 13. Bay Point also asserts that even if New Palace had met the standards in the regulation, they still had not taken all reasonable measures to prevent the SportsZ-one from coming loose. They claim that Treasure Bay, another casino in Biloxi, took additional, reasonable measures to ensure their barge did not come loose, which it did not. The duty New Palace owed to Bay Point only required that they use reasonable measures and did not require that they take additional measures for the unforeseen. Since we have already determined that they took reasonable measures, this argument is without merit.
 

 ¶ 14. The trial court also held that New Palace had established that Hurricane Katrina was an “Act of God.” It is clear that Hurricane Katrina was an unprecedented hurricane that was unforeseeable. Acts of God are defined as “events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them.”
 
 [12]
 
 Further, “an ‘Act of God’ is not only one which causes damage, but one as to which reasonable precautions and/or the exercise of reasonable care by the defendant, could not have prevented the damage from the natural event.”
 
 [13]
 
 The injury caused during the Act of God must be solely due to “natural causes without human intervention, which could not have been prevented by exercise of reasonable care and foresight.”
 
 [14]
 

 ¶ 15. In 1969, Hurricane Camille hit the Mississippi coast with a force that was considered to be unforeseeable. Hen-ning stated in his report, which was submitted with the motion for summary judgment, that Hurricane Katrina was the
 
 *826
 
 most destructive tropical cyclone ever to hit the United States and that in terms of property damage, it “far exceeded” Hurricane Camille as the benchmark for natural disasters in Mississippi. The storm surge near New Palace’s location was approximately twenty-three-feet high. This was eight to ten feet higher than the storm surge that Hurricane Camille produced in the bay. Hurricane Katrina also produced the greatest amount of kinetic energy for a hurricane ever, which was four to five times more than the kinetic energy produced by Hurricane Camille. We cannot find that the trial court was wrong in finding that Hurricane Katrina was an “Act of God.”
 

 ¶ 16. We find that the trial court did not err in finding that there is no genuine issue of material fact as to whether New Palace breached its duty owed to Bay Point. Because there is no genuine issue of material fact as to whether New Palace breached its duty to Bay Point, the claim for negligence must fail, and summary judgment on this matter was proper.
 

 C. Negligence Per Se
 

 ¶ 17. Bay Point claims that there is enough evidence to support a finding of negligence per se against New Palace for the damage to its property by violating United States Coast Guard regulations. Because of this, Bay Point contends that summary judgment for New Palace should not have been granted. To succeed in a negligence-per-se claim, Bay Point must prove that: (1) it is a member of the class sought to be protected under the statute; (2) its injuries were of a type sought to be avoided by the statute; and (3) the violation of the statute proximately caused or contributed to its injuries.
 
 [15]
 

 ¶ 18. The Coast Guard has the statutory authority to set out regulations governing vessels located in navigable waters of the United States.
 
 [16]
 
 This includes standards related to the mooring systems of permanently moored vessels (PMV).
 
 [17]
 
 The Coast Guard laid out these standards in their Marine Safety Manual.
 
 [18]
 
 After considering Bay Point’s argument, the trial court held that “even assuming that there were violations with regard to paperwork regarding the barge’s status as a PMV, those violations cannot be shown to have proximately caused the destruction of Bay Point.”
 

 ¶ 19. Bay Point argues that New Palace had a duty to have the SportsZone inspected and certified by the Coast Guard under these regulations. Bay Point claims that had the SportsZone been inspected, it is likely that the Coast Guard would have required more stringent and/or secondary restraints. The reasoning behind this is that during the inspection of the moorings, the Coast Guard would have considered local 100-year-storm winds and surge conditions. New Palace counters that they are only guilty of a clerical error for not filing all required paperwork with the Coast Guard regarding the status of the SportsZone as a PMV. New Palace argues that the Coast Guard does not test the strength of a mooring system in determining whether to grant a vessel PMV status, the Coast Guard simply makes sure that the vessel is immobilized and removed from navigation.
 

 
 *827
 
 ¶ 20. First, the plaintiff is a member of the class the statute meant to protect since they operate a business immediately adjacent to a navigable waterway.
 
 [19]
 
 Next, the ■ statute was enacted, in part, to protect those businesses from damage by vessels on a navigable waterway.
 
 [20]
 
 The third requirement — that there is a violation of a statute which is the proximate cause or contributed to injuries — is where the disagreement comes about.
 

 ¶ 21. It is clear and undisputed by New Palace that it violated the statute by not filling out the paperwork to receive its PMV status for the SportsZone. However, after reviewing the record, we find that there is no evidence to suggest that had New Palace correctly filed the paperwork to request a PMV status for the Sports Zone that the Coast Guard would not have granted it. The evidence shows that the mooring system of the SportsZone not only exceeded the Commission’s requirements, but also the previous highest storm surge at the SportsZone’s location created by Hurricane Camille. As such, this issue is without merit.
 

 CONCLUSION
 

 ¶22. On the claim of negligence, Bay Point failed to put on significant evidence to show that there was a genuine issue of material fact. New Palace took reasonable steps in mooring its barge in light of the applicable regulations and foreseeable weather conditions of Biloxi Bay. We further find that there is no evidence presenting a genuine issue of material fact whether the failure of New Palace to obtain its PMV status with the Coast Guard for the SportsZone proximately caused damage to Bay Point. Accordingly, the judgment of the trial court granting summary judgment in favor of New Palace is affirmed.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .
 
 Russell v. Orr,
 
 700 So.2d 619, 622 (¶ 8) (Miss.1997) (citing
 
 N. Elec. Co. v. Phillips,
 
 660 So.2d 1278, 1281 (Miss.1995)).
 

 [2]
 

 . M.R.C.P. 56(c).
 

 [3]
 

 .
 
 Univ. Of Miss. Med. Ctr. v. Easterling,
 
 928 So.2d 815, 817 (¶ 8) (Miss.2006) (citing
 
 Davis
 
 v.
 
 Hoss,
 
 869 So.2d 397, 401 (¶ 10) (Miss.2004)).
 

 [4]
 

 .
 
 Id.
 

 [5]
 

 .
 
 Drummond v. Buckley, 621
 
 So.2d 264, 267 (Miss. 1993) (citing
 
 Palmer v. Biloxi Reg’l Med. Ctr.,
 
 564 So.2d 1346, 1356 (Miss.1990)).
 

 [6]
 

 .
 
 Lyle v. Mladinich,
 
 584 So.2d 397, 399 (Miss.1991) (citing
 
 May v. V.F.W. Post # 2539,
 
 577 So.2d 372, 375 (Miss.1991)).
 

 [7]
 

 .
 
 Rein v. Benchmark Constr. Co.,
 
 865 So.2d 1134, 1143 (¶ 30) (Miss.2004).
 

 [8]
 

 .
 
 Lyle,
 
 584 So.2d at 399.
 

 [9]
 

 .
 
 Rein,
 
 865 So.2d at 1143 (¶ 29) (quoting
 
 Lyle,
 
 584 So.2d at 399).
 

 [10]
 

 .
 
 Ill. Cent. R. Co. v. Bloodworth,
 
 166 Miss. 602, 145 So. 333, 336 (1933).
 

 [11]
 

 . Miss. Gaming Comm'n Reg. § II(B)(10).
 

 [12]
 

 . McFarland v. Entergy Miss., Inc.,
 
 919 So.2d 894, 903 (¶28) (Miss.2005) (quoting
 
 Skandia Ins. Co. v. Star Shipping,
 
 173 F.Supp.2d 1228, 1239 (S.D.Ala.2001)).
 

 [13]
 

 .
 
 Id.
 
 (citations omitted).
 

 [14]
 

 .
 
 City of Hattiesburg v. Hillman,
 
 222 Miss. 443, 76 So.2d 368, 371 (1954).
 

 [15]
 

 .
 
 Moore v. K & J Enters.,
 
 856 So.2d 621, 624 (¶ 5) (Miss.Ct.App.2003) (citing
 
 Brennan v. Webb,
 
 729 So.2d 244, 249 (¶ 17) (Miss.Ct.App.1998)).
 

 [16]
 

 . 33 U.S.C. §§ 1221,
 
 et seq.
 
 (2006).
 

 [17]
 

 . 33 U.S.C. § 1225(a)(2) (2006).
 

 [18]
 

 . Marine Safety Manual, Volume II, Section (B)(4)(I)(1).
 

 [19]
 

 . 33 U.S.C. § 1225(a)(2).
 

 [20]
 

 .
 
 Id.