# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01793-SCT

## CONSOLIDATED WITH:

## NO. 2010-CT-00307-SCT

*CHERRI R. PORTER*

*v.*

*GRAND CASINO OF MISSISSIPPI, INC.- BILOXI,*
*STATE FARM FIRE AND CASUALTY COMPANY,*
*AND MAX MULLINS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/2012 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES ELDRED RENFROE |
| | ROY J. PERILLOUX |
| ATTORNEYS FOR APPELLEES: | VINCENT J. CASTIGLIOLA, JR. |
| | JOHN PATRICK KAVANAGH, JR. |
| | KASEE GARNET SPARKS HEISTERHAGEN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 01/07/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Cherri Porter's beachfront vacation home was completely destroyed during Hurricane

Katrina. Porter claimed the destruction was the result of a barge, owned by Grand Casino of

Mississippi, Inc.–Biloxi (Grand Casino), breaking free from its moorings and alliding with

her home. Because Porter's all-risk insurance policy excluded from coverage damage caused

by water or windstorm, State Farm Fire and Casualty Company (State Farm) denied Porter's claim. Porter filed suit against the insurance agent who maintained the policy, Max Mullins, against State Farm, and against Grand Casino. The trial court granted summary judgment in favor of each defendant, and the Court of Appeals affirmed. Porter filed a petition for writ of certiorari claiming genuine issues of fact existed as to each defendant, and we granted her petition.

## FACTS AND PROCEDURAL HISTORY

¶2.     The pertinent facts can be taken from the Court of Appeals opinion:

> Porter's home on East Beach Boulevard, Biloxi, Mississippi, was destroyed during Hurricane Katrina. According to Porter, the destruction occurred when the barge operated by Grand Casino of Mississippi, Inc.–Biloxi came loose from its moorings and allided with her home.
>
> Porter made a claim under her "all-risk" homeowner's insurance policy with State Farm Fire and Casualty Company. But her policy expressly excluded loss caused by wind or water damage—as well as "loss [that] would not have occurred in the absence of [an] excluded event[ ]." Because any loss caused by the barge would not have occurred in the absence of an excluded event—specifically the flood of storm surge that broke Grand Casino's barge from its moorings—State Farm denied coverage.
>
> Porter sued State Farm for bad-faith denial of coverage and negligence in issuing her policy. She included a claim against State Farm agent Max Mullins, alleging Mullins negligently issued her a substandard policy and violated statutory trade practices. Porter also named Grand Casino as a defendant, alleging it had been negligent in its design and maintenance of the barge's mooring system.
>
> In 2009, State Farm and Mullins succeeded in having the claims against them dismissed on summary judgment. Porter had admitted there was no other explanation for the barge's movement other than the forces of wind and water. Because the policy clearly and unambiguously excluded loss caused by water, the trial court found State Farm was entitled to a judgment in its favor. And since Mullins had never made contrary representations to Porter, the trial judge

2

found Mullins was also entitled to a judgment in his favor.

Porter appealed. But because the grant of summary judgment in State Farm's and Mullins's favor was not a final judgment, as it left pending the claims against Grand Casino, the Mississippi Supreme Court dismissed the appeal. . . .

In 2012, the Grand Casino was also granted summary judgment in its favor. . . . . The circuit court found Porter could not establish a jury question over whether Grand Casino failed to meet [its] duty. The undisputed evidence showed the safety measures Grand Casino took were designed to withstand a hurricane equaling in severity the worst hurricane then on record. . . .

With all claims against all defendants disposed of, both the 2009 and 2012 summary-judgment orders became final and appealable. *See* M.R.C.P. 56(b). Porter timely appealed both judgments.

***Porter v. Grand Casino of Mississippi, Inc.-Biloxi***, 138 So. 3d 952 (Miss. Ct. App. May 13, 2014). After the Court of Appeals denied Porter's motion for rehearing, Porter filed a petition for writ of certiorari with this Court.

¶3.     Caesars Entertainment Operating Company, Inc., including its affiliate Grand Casinos of Mississippi, Inc., filed for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the Northern District of Illinois. On March 25, 2015, this Court stayed the appeal pursuant to 11 U.S.C. § 362(a). On October 2, 2015, Grand Casino and Porter entered an agreed order to lift the stay for purposes of this appeal.

## DISCUSSION

¶4.     A trial court's grant or denial of summary judgment is reviewed de novo. ***Eli Invs., LLC v. Silver Slipper Casino Venture, LLC***, 118 So. 3d 151, 154 (Miss. 2013). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence is viewed in the light most favorable to the opposing party. *Id.* The party opposing the motion must be diligent and, by allegations or denials, must set forth specific facts showing there are genuine issues for trial. *Davis v. Hoss*, 869 So. 2d 397, 401 (Miss. 2004).

### I. State Farm

¶5.     The interpretation of an insurance policy is a question of law. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (citations omitted).  Insurance policies are interpreted and construed liberally in favor of the insured. *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). If the words of an insurance policy are clear and unambiguous, they must be interpreted as written. *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

¶6.     Porter had an all-risk homeowner's insurance policy with State Farm, which covered all risks except those specifically excluded under the policy. *See* Jeffrey Jackson, *Mississippi Insurance Law and Practice* § 15:17 (2014). Porter contends that State Farm denied her claim in bad faith, arguing that the barge was the true cause of the destruction of her home and, because loss from debris is not specifically excluded in her insurance policy, State Farm should have covered the loss. However, Porter's insurance policy clearly stated:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. . . . Water Damage, meaning: (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not. . . .

4

The insurance policy additionally excluded "loss resulting directly or indirectly from windstorm or hail."

¶7.     In *Corban*, the homeowner's insurance policy excluded loss caused directly or indirectly by water damage but covered loss caused by wind damage. *Corban*, 20 So. 3d 601, 616 (Miss. 2009). Hurricane Katrina damaged the insured's home, and the insurance company denied coverage because the policy excluded damage caused by flood and because the policy contained an anticoncurrent cause (ACC) clause which excluded loss caused directly or indirectly by flood, "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* at 612. This Court found that "wind damage that precedes the arrival of the storm surge and damage that happens after the storm surge arrives are separate losses from separate causes. . . ." *Id.* at 617 (quoting *Dickinson v. Nationwide Mut. Fire Ins. Co.*, 2008 WL 1913957, *6 (S.D. Miss. April 25, 2008)). The wind damage, a covered loss, was not caused directly or indirectly by the storm surge; therefore, this Court remanded the case to allow a jury to determine which losses were caused by wind and which losses were caused by flood. *Id.*

¶8.     The instant case is distinguishable. Under Porter's policy, State Farm excluded from coverage both loss caused by wind damage and loss caused by water damage. Although Porter's policy does include an ACC clause, the policy first unambiguously states that any loss that would not have occurred absent water damage is not covered. Porter argues that the expert affidavit she produced specifically states that the home was destroyed by the barge and not by any other means. Yet the barge, without any other means, could not have allided with

Porter's home. It is illogical to interpret the language "we do not insure *under any coverage* for any loss which would not have occurred in the absence of . . . [w]ater damage" to mean that debris in a storm surge, which indisputably is an uncovered loss, would be covered when water caused the debris to allide with the property. (Emphasis added.) Loss from waterborne debris cannot occur in the absence of water.

¶9.     Further, the insurance policy's ACC clause states, "[w]e do not insure for such loss regardless of: . . . whether other causes acted concurrently or in any sequence with the excluded event to produce the loss. . . ." Unlike the wind damage in ***Corban***, the barge did not act independently to cause loss, but instead operated in conjunction with the storm surge to damage Porter's home. The application of the ACC clause does not provide a genuine issue of fact.

¶10.    Porter additionally argues that there is ambiguity because the policy covers loss from impact by a vehicle, and that the barge became a vehicle when it broke free from its moorings. This provision, under coverage for personal property, expressly states that vehicles are insured, "except as provided in Section 1 - Losses Not Insured." Section 1 excludes from coverage loss that would not have occurred in the absence of water. The plain language of the policy states that loss which would not have occurred in the absence of water damage is not covered. Even in construing the language in favor of Porter, this is not ambiguous. The barge was not an independent cause but worked in conjunction with the storm surge to allide with Porter's home, and the loss of the property would not have occurred absent water damage. Thus, the loss unambiguously was not covered under Porter's all-risk policy, and

6

this issue cannot survive summary judgment.

## II. Max Mullins

¶11.    On certiorari, Porter did not argue any error regarding the claims against Mullins. "If an appellant fails to support her. . . allegation of error with argument or authority, this Court need not consider the issue." *Christmas v. State*, 10 So. 3d 413, 423 (Miss. 2009) (quoting *Pierre v. State*, 607 So. 2d 43, 48 (Miss. 1992)).Therefore, the issue is considered abandoned, and this Court need not address it.

## III. Grand Casino

¶12.    Porter next contends that Grand Casino was negligent in mooring its barge and that the barge was the proximate cause of the destruction of her home. The elements of negligence are well-established: duty or standard of care, breach of that duty or standard, proximate causation, and damages or injury. *Lyle v. Mladnich*, 584 So. 2d 397, 399 (Miss. 1991).

¶13.    It is undisputed that Grand Casino owed a duty to property owners in close proximity to take reasonable measures to prevent foreseeable injuries in the event of a hurricane. *See Eli Invs., LLC v. Silver Slipper Casino Venture, LLC*, 118 So. 3d 151 (Miss. 2013); *Bay Point High and Dry, LLC v. New Palace Casino, LLC*, 46 So. 3d 821, 824 (Miss. Ct. App. 2010). This Court next looks to determine whether Porter established a genuine issue of fact as to whether Grand Casino breached this duty.

¶14.    Porter argues that the instant case is comparable to *Eli*, in which this Court reversed summary judgment because affidavits produced by each party established a battle of the

experts and created genuine issues of fact. *Eli*, 118 So. 3d at 155. After a casino barge was torn from its moorings during Hurricane Katrina and allided with a hotel owned by Eli, Eli filed suit and produced an expert affidavit in answer to summary judgment, stating that Hurricane Katrina's storm surge was foreseeable in light of prior storm history. *Id.* at 153, 155. The affidavit was supported by statistics citing storms with surges greater than fifteen feet prior to Katrina. *Id.* The casino provided an affidavit from an expert who opined that the casino was adequately moored to comply with licensing regulations and that the barge did not break free from its moorings until storm surge reached higher than fifteen feet. *Id.* This Court held that there was a genuine issue of fact as to whether the casino had breached its duty and reversed summary judgment. *Id.* at 156.

¶15.     In contrast, the Court of Appeals in *Bay Point* affirmed summary judgment after finding that the expert affidavits failed to establish a material issue of fact as to whether the casino had breached its duty when the barge came loose from its moorings and struck a marina. *Bay Point*, 46 So. 3d at 827. The casino produced an expert affidavit stating that the barge was moored in a manner that exceeded regulation standards. *Id.* at 824, 825. Bay Point's expert acknowledged that the designs met regulation standards but suggested that the standards should be doubled. *Id.* at 825. Bay Point argued that the casino had failed to take additional measures to prevent the barge from coming loose. *Id.* The casino submitted a report stating that Hurricane Katrina far exceeded Hurricane Camille in damage to property and produced a storm surge eight to ten feet higher than Camille's. *Id.* at 825, 826. The court found that there was no genuine issue of material fact because the casino had produced

8

evidence that Hurricane Katrina was unforeseeable and that the casino had taken reasonable measures to prevent foreseeable injuries in the event of a hurricane. *Id.* at 826.

¶16.    Here, to prove Grand Casino met its duty to take reasonable measures to prevent foreseeable injuries, Grand Casino provided the affidavits of two experts stating that the casino had exceeded the Commission's licensing regulations by mooring the barge to withstand seventeen-foot tidal surges. Porter did not provide an affidavit from a meteorologist stating that a storm surge of more than fifteen feet was foreseeable. Although Porter's sole expert stated that no evidence was produced that Grand Casino had performed annual structural inspections on the moorings, he did not opine that the barge had been torn free from its moorings as a result. He also did not take the position that the barge came loose before the tidal surge reached fifteen feet. Porter's expert merely concluded that no heavy storm mooring plan was submitted, and the absence of a plan is a deviance from customary practice.[1] However, again, there was no contention that a heavy storm mooring plan would have prevented the casino from coming unmoored during Hurricane Katrina.

---

[1]Porter's expert affidavit stated:

> [I] was asked to review the annual inspections and heavy storm mooring plan of this Defendant. . . .
> [I]t is my expert opinion that no evidence that any annual structural inspections were performed on any marine structures including but not limited to, breasting dolphins, mooring dolphins, bollards, monopoles, floating docks, cells and other mooring devices.
> That no heavy storm mooring plan was submitted by this Defendant and the absence of a plan is a deviance from the customary practice.

Porter's expert did not state that the absence of evidence of structural inspections or the lack of submission of a heavy storm mooring plan contributed to the barge breaking away from its moorings or that Grand Casino was negligent in maintaining its moorings.

9

¶17. Porter did not establish a battle of the experts. An expert affidavit concluding that no evidence was produced showing annual structural inspections or a heavy storm mooring plan fails to establish an issue of material fact as to whether Grand Casino breached its duty to Porter to take reasonable measures to prevent foreseeable injury. Therefore, summary judgment was appropriate on this issue.

## CONCLUSION

¶18. Because Porter's all-risk insurance policy unambiguously excluded from coverage loss that would not have occurred absent water damage, no genuine issue of material fact existed as to Porter's bad-faith denial of coverage claim against State Farm. Additionally, Porter failed to produce sufficient evidence showing a genuine issue of fact as to whether Grand Casino breached its duty to take reasonable measures to prevent foreseeable injury. We affirm the decisions of the trial court and of the Court of Appeals as to all issues.

¶19. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶20. Because Cherri Porter's homeowners' insurance policy provided coverage for a barge's crashing into her home and the question of whether a storm such as Hurricane Katrina was foreseeable is an issue of material fact best left for determination by a jury, I respectfully dissent.

    **I.     Cherri Porter's homeowners' insurance policy provided coverage for the event of a barge alliding with her house.**

10

¶21.    The interpretation of an insurance policy is a question of law which we review *de novo*. ***Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.***, 883 So. 2d 1159, 1166 (Miss. 2004).

¶22.    When interpreting insurance contracts, "[e]xclusions and limitations on coverage are . . . construed in favor of the insured. Language in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted." ***United States Fid. & Guar. Co. v. Martin***, 998 So. 2d 956, 963 (Miss. 2008) (internal citations omitted).

¶23.    Porter contracted with State Farm Fire and Casualty Company for an all-risk homeowners' insurance policy. This policy covered all risks or perils, unless the risk was specifically excluded. State Farm contends that the following provision excluded the damage caused by a barge that crashed into Porter's home: "We do not insure under any coverage for any loss which would not have occurred in the absence of . . . Water Damage, meaning: . . . flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether driven by wind or not[.]"

¶24.    In ***Corban v. United Services Automobile Association***, 20 So. 3d 601 (Miss. 2009), the Corbans filed suit against United Services Automobile Association (USAA), arguing that USAA fraudulently denied their claims based on damage that their home had sustained during Hurricane Katrina. Their homeowners' insurance policy excluded losses due to "water damages," and contained an "anticoncurrent cause" ("ACC") provision. The policy, however, did not contain an exclusion for damages caused by wind.

¶25.    In response to USAA's motion for summary judgment, the circuit court found that the policy "bars coverage for water damage and only the water damage, whether occurring alone

11

or in any order with another cause." *Id.* at 612.

¶26.    This Court considered the ACC provision and found a jury question, reasoning:

> [T]he facts presented in the case *sub judice* do not reveal a claim by either party that an indivisible force (wind and flood), occurring at the same time, caused direct physical damage resulting in simultaneous loss to the property. Based upon the record as it now stands, and as presented by both parties, the subject perils acted in sequence, not concurrently, i.e., at different times, causing different damage, resulting in separate losses. It is only when the two perils converge at the same point in time, contemporaneously and operating in conjunction, that there is a "concurrent" cause or event. If the wind peril causes damage resulting in a loss either before or after the water peril ("flood") causes damage resulting in a loss, the losses are not "concurrent." Only if it can be proven that the perils (wind and flood) contemporaneously converged, operating in conjunction to cause loss, that the "concurrent" provision will apply. In that circumstance, the policy clearly excludes coverage.
> . . .
> Based on the evidence thus far presented, the same loss with multiple causes is not at issue here. Thus, a finder of fact must determine what losses, if any, were caused by wind, and what losses, if any, were caused by flood. If the property suffered damage from wind, and separately was damaged by flood, the insured is entitled to be compensated for those losses caused by wind. Any loss caused by "[flood] damage" is excluded.

*Id.* at 614-15, 616; *see also* **Robichaux v. Nationwide Mut. Fire Ins. Co.**, 81 So. 3d 1030 (Miss. 2011) (holding that summary judgment was improper because genuine issues of material fact remained with respect to whether structures and personal property were damaged by wind prior to the storm surge).

¶27.    In the present case, the insurance policy contained the following ACC clause: "[w]e do not insure for such loss regardless of: . . . whether other causes acted concurrently or in any sequence with the excluded event to produce the loss."  Porter has adduced proof that the damage to her home was not from flooding but instead from the collision of Grand Casino's barge with her house. The violent collision of an oceangoing barge with one's

12

house does not fit any reasonable definition of "water damage" under the policy at hand or under any commonly understood definition of "water damage." Consistent with our determinations in **Corban** and **Robichaux** that there was a genuine issue of material fact for a jury to determine whether the damage to the those policy holders' homes was caused by wind or water, a jury in this case should be trusted to ascertain the difference between damage caused by water and damage caused by a vessel's crashing into an insured's residence. Clearly, this is a genuine issue of material fact that is appropriate for resolution by a jury.

**II.  Whether Grand Casino was negligent in mooring its casino barge and failed to prevent foreseeable damages in the event of a hurricane is a question of fact which is best left for determination by a jury.**

¶28.  The Circuit Court of the Second Judicial District of Harrison County granted summary judgment in favor of Grand Casino, finding that the storm surge from Hurricane Katrina was unforeseeable and an "Act of God."

¶29.  In reviewing a lower court's grant of summary judgment, this Court employs a *de novo* standard of review. ***Anglado v. Leaf River Forest Prods*.**, 716 So. 2d 543, 547 (¶ 13) (Miss. 1998). Rule 56 of the Rules of Civil Procedure provides the basis for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

¶30.  This Court will consider all of the evidence before the trial court in the light most

favorable to the nonmoving party. *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).

¶31.    To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation and injury. *Meena v. Wilburn*, 603 So. 2d 866, 869 (Miss. 1992).

¶32.    The majority declares that Grand Casino "owed a duty to property owners in close proximity to take reasonable measures to prevent foreseeable injuries in the event of a hurricane." The majority goes on to find, however, that the harm in this case, the Grand Casino barge's coming unmoored during the storm surge and striking Porter's house, was unforeseeable.

¶33.    Under our well-established precedent, for a person or entity to be liable for another's injury, the cause of injury must be of such character and done under such circumstances that the actor reasonably should have anticipated some injury as a probable result. *Mauney v. Gulf Ref. Co.*, 193 Miss. 421, 9 So. 2d 780, 781 (1942). Stated differently, for a party to be liable, the injury must be a foreseeable result of negligent conduct. *See id.* This Court has adopted a broad definition of *foreseeability*, holding simply that things are foreseeable if they are "not unforeseeable." *Billups Petroleum Co. v. Entrekin*, 209 Miss. 302, 313, 46 So. 2d 781, 784 (1950) ("It is no defense that the liability is seen to extend beyond the risk. . . . The test is not always whether an intervening or activating cause is foreseeable if it be not unforeseeable."). This Court has expressly rejected the argument that there is no negligence because the injury rarely occurs, or never before occurred. *Gulf Ref. Co. v. Williams*, 183 Miss. 723, 185 So. 234, 235 (1938) (citing *Crawford v. City of Meridian*, 174 Miss. 875, 165

So. 612 (1936)). With regard to foreseeability, the "inquiry is not whether the thing is to be foreseen or anticipated as one which will probably happen, . . . but whether it is likely to happen, even though the likelihood may not be sufficient to amount to a comparative probability." *Williams*, 185 So. at 236. This Court also has held that defendants "cannot escape liability because a particular injury could not be foreseen, if *some* injury ought to have been reasonably anticipated." *Delta Elec. Power Ass'n v. Burton*, 240 Miss. 209, 126 So. 2d 258, 261 (1961) (emphasis added).

¶34.    Foreseeability is relevant to both the duty and proximate cause elements of a negligence claim. *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004). The difference between defining the issue of foreseeability as one of duty or of proximate cause is the standard of review that we apply. *Id.* We review questions of duty *de novo* because duty is a matter of law; but we review forseeability as it relates to proximate causation under a clearly erroneous standard, because it generally is considered an issue of fact that is best decided by a jury. *Id.*

¶35.    Here it is indisputable that Grand Casino had a legal duty to protect against foreseeable damages in the event of a hurricane.

¶36.    Turning to the element of breach, Porter argues that Grand Casino breached its duty to protect against foreseeable damages in the event of a hurricane by allowing its barge to come unmoored from its dock during Hurricane Katrina. This Court has addressed almost identical facts to the ones in this case in *Eli Investments, LLC v. Silver Slipper Casino Venture, LLC*, 118 So. 3d 151 (Miss. 2013). In that case, Eli Investments sued Silver

15

Slipper Casino Venture and Silver Slipper Gambling (collectively "Silver Slipper"), and Broadwater Development to recover damages that befell Eli's hotel when Silver Slipper's casino crashed into it during Hurricane Katrina. *Id.* at 152. The trial court granted Silver Slipper's and Broadwater's motions for summary judgment, finding that Hurricane Katrina's storm surge was unforeseeable. *Id.* at 153-54. This Court disagreed, finding that "that Eli has offered sufficient proof to create a genuine dispute of material fact regarding Silver Slipper's breach of its duty to take reasonable precautions to protect those in close proximity to the . . . Casino during Hurricane Katrina." *Id.* at 155.

¶37. Porter has produced evidence that Grand Casino had not performed mandatory, annual safety inspections on its mooring system and that Grand Casino did not have a heavy-storm mooring plan, which was a deviation from customary practice. However, the gravamen of Porter's complaint alleges a cause of action under the doctrine of *sic utere tuo ut alienum non laedas*, or the obligation to use one's property in such a manner that it does not disturb others. *See **Southland Co. v. Aaron***, 221 Miss. 59, 72 So. 2d 161, 166 (1954). Negligence, as pled in Porter's complaint, is used in the broad sense of lack of due care in the use and care of Grand Casino's property. If Grand Casino had a duty of due care in the maintenance of its property, particularly to prevent foreseeable damages in the event of a hurricane, and its barge became unmoored during the course of Hurricane Katrina, there necessarily exists a question of fact regarding whether Grand Casino breached its duty of care. Thus, Porter has alleged sufficient facts to establish a genuine issue of material fact regarding whether Grand Casino breached its duty of care.

¶38.    Grand Casino has produced affidavits from two experts who aver that Grand Casino took reasonable measures to prevent foreseeable injuries because it had exceeded the Mississippi Gaming Commission's regulations by mooring its barge so that the barge could withstand a seventeen-foot-high storm surge.  However, in *Eli Investments*, we held that "alleged compliance with Gaming Commission [mooring-related] regulations does not automatically shield [casinos] from liability." *Eli Investments*, 118 So. 2d at 155. "[S]tate boards and commissions are creatures of statute and have no powers other than those delegated to [them] by the Legislature." *Howard v. Estate of Harper*, 947 So. 2d 854, 859 (Miss. 2006) (citing *Masonite Corp. v. State Oil & Gas Bd.*, 240 So. 2d 446, 449 (Miss. 1970)).  In *Eli*, we found that the Gaming Commission's mooring-related regulations were "enacted merely as a condition of licensure, not as a conclusive standard of care for all casinos in all circumstances." *Eli*, 118 So. 3d at 155. Therefore, by producing expert affidavits saying that Grand Casino had exceeded Gaming Commission mooring regulations, Grand Casino has not proven that it satisfied its duty to prevent foreseeable damages in the event of a hurricane.

¶39.    So our analysis turns to whether Hurricane Katrina was an event extreme enough to qualify it as an Act of God, thereby relieving Grand Casino of liability. The Act of God defense is an affirmative defense to the element of causation. "No one is liable for an injury proximately caused by an act of God[.]" *City of Jackson v. Brummett*, 224 Miss. 501, 80 So. 2d 827, 829 (1955). An Act of God is an injury due exclusively to forces of nature, without human intervention, which could not have been prevented by the use of due care and

17

reasonable foresight. *Id.* The Act of God defense applies to "events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." *McFarland v. Entergy Mississippi, Inc.*, 919 So. 2d 894, 904 (Miss. 2006). However, an injury which could have been prevented through the use of ordinary care is not an Act of God which would absolve the tortfeasor of liability. *City of Hattiesburg v. Hillman*, 222 Miss. 443, 76 So. 2d 368, 370 (1954).

¶40. Porter has produced evidence that Hurricane Katrina was a Category Three hurricane which caused a storm surge of twenty-one to twenty-five feet and that multiple storms have hit the Gulf Coast with comparable storm surges: Hurricane Andrew (seventeen feet storm surge), Hurricane Opal (twenty feet storm surge), Hurricane Ivan (fifteen feet storm surge), and Hurricane Camille (twenty-five feet storm surge). Although an issue of fact exists about whether Hurricane Katrina was an unprecedented event in terms of its destructiveness, it is unreasonable to suggest, as a matter of law, that a Category Three hurricane's hitting the Mississippi Gulf Coast was unforeseeable. Porter has presented sufficient evidence to create a genuine issue of material fact regarding whether, through the use of ordinary care, Grand Casino could have avoided its barge's coming unmoored during Hurricane Katrina. *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999) ("While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury.").

¶41. Finally, Grand Casino's barge forcefully struck Porter's home, causing damages.

¶42. Ultimately, Porter has articulated a *prima facie* claim that Grand Casino was negligent

18

in failing to moor its barge so as to ensure it would remain moored during a hurricane, and this case should be submitted to a jury.

**CONCLUSION**

¶43. In summary, a loose barge's destruction of an onshore dwelling is not fairly characterized as "water damage" under the terms of Porter's homeowners' insurance policy. Further, Grand Casino had a duty to prevent foreseeable damages in the event of a hurricane. Whether Hurricane Katrina was such an unforeseeable circumstance that Grand Casino is relieved of liability is a question of fact for the jury to decide, not a question of law for this Court's resolution. I respectfully dissent.